UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEVRA B. B.,[1]

                            Plaintiff,                      6:20-cv-00643 (BKS)

v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

**Appearances:**

*For Plaintiff:*
Peter W. Antonowicz
Office of Peter W. Antonowicz
148 West Dominick Street
Rome, NY 13440

*For Defendant:*
Antoinette T. Bacon
Acting United States Attorney
Amelia Stewart
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
J.F.K. Federal Building, Room 625
Boston, MA 02203

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Devra B. B. filed this action under 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Supplemental Social Security Income ("SSI") and Social Security Disability

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect her privacy.

Insurance ("SSDI") Benefits. (Dkt. No. 1). The parties' briefs, filed in accordance with N.D.N.Y. General Order 18, are presently before the Court. (Dkt. Nos. 14, 20). After carefully reviewing the Administrative Record,[2] (Dkt. No. 8), and considering the parties' arguments, the Court reverses the Commissioner's decision and remands this matter for further proceedings.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSI and SSDI benefits on June 21, 2017,[3] alleging disability due to a variety of physical and mental impairments with an alleged onset of February 22, 2017. (R. 202–15). Plaintiff's claims were denied initially on September 14, 2017. (R. 105–06). Plaintiff appealed that determination, and hearings were held before Administrative Law Judge ("ALJ") David Romeo on March 22, 2019, at which Plaintiff was represented by non-attorney representative Joel Antonowicz. (R. 70–104, 193). On April 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 33–46). Plaintiff filed a request for review of that decision with the Appeals Council on April 3, 2019. (R. 199–200). As discussed further below, Plaintiff also submitted additional evidence to the Appeals Council for consideration. (*See* R. 10–24). The Appeals Council denied review on May 18, 2020. (R. 1–7). Plaintiff commenced this action on June 9, 2020. (Dkt. No. 1).

### B. Plaintiff's Background and Record Evidence[4]

Plaintiff was 51 years old at the time of the March 22, 2019 hearing. (R. 74). Plaintiff completed high school and testified that she received an Associate Degree in occupational

---

[2] The Court cites to the Bates numbering in the Administrative Record, (Dkt. No. 8), as "R." throughout this opinion, rather than to the page numbers assigned by the CM/ECF system.

[3] The date listed on Plaintiff's application summaries is June 21, 2017. (R. 202, 209). The ALJ and the parties all refer to Plaintiff's application date as June 12, 2017. (R. 33; Dkt. No. 14, at 2; Dkt. No. 20, at 2).

[4] Because the Court remands in light of new medical opinion evidence submitted to the Appeals Council, the Court includes only a brief synopsis of the underlying facts and record evidence.

therapy. (R. 75–76). She had previously worked as an occupational therapy assistant, phlebotomist, fast food worker, and day care worker. (*See* R. 76–83). Plaintiff stopped working as a phlebotomist, her most recent job, because it hurt her back and she started to "forget things." (R. 85).

At the time of the hearing, Plaintiff lived with her parents. (R. 74). She complained of pain "all over," migraines, vertigo, tinnitus, and difficulty getting along with coworkers. (R. 86–87). She testified that her parents help with reminding her to take her medication, laundry, cooking, and getting her dressed. (R. 89–91).

The medical evidence in the record indicates that Plaintiff has been seen for a variety of physical conditions. For example, Plaintiff has sought treatment for scoliosis as well as chronic neck and back pain. (*E.g.*, R. 475, 487). Plaintiff had surgery on her right rotator cuff and has limited bilateral shoulder range of motion. (R. 628–29, 637). The record includes treatment notes from visits pertaining to Plaintiff's chronic migraines, vertigo, tinnitus, asthma, and fatigue. (*E.g.*, R. 467, 934, 940). Plaintiff, whose weight has fluctuated over the period at issue, is also obese. (R. 509).

The medical evidence also indicates that Plaintiff has been diagnosed with and received treatment for anxiety, depression, and Attention-Deficit/Hyperactivity Disorder ("ADHD"). (R. 388). Plaintiff has seen Psychiatric Nurse Practitioner Timothy Jones, NPP, since August 2016 approximately every one to two months. (*See generally* R. 535–86, 825–914). Treatment notes from Nurse Practitioner Jones indicate that Plaintiff was sometimes tearful and anxious during visits and complained of depression, anxiety, and trouble with focus and concentration. (*E.g.*, R. 541, 553, 561, 565). Other treatment notes from Nurse Practitioner Jones describe Plaintiff as "pleasant and conversant," and report that Plaintiff has "days when she feels good several days at

3

a time" but that her depression is worse on "days when she has nothing to do." (R. 580, 584). Treatment notes indicate that Plaintiff often complained of difficulty with focus and concentration, but also that she reported periods of improvement in those areas. (R. 861, 912).

In addition to the medical evidence, the ALJ had before him opinions from the following: (1) state agency medical consultants Gabriel Feldman, M.D., and Kimberly Lieber-Diaz, Psy.D. (R. 107–38); (2) consultative examiner Rita Figueroa, M.D. (R. 512–16); (3) consultative examiner David Schaich, Psy.D. (R. 519–23); (4) Ashley Ritter, LMSW (R. 530–32); (5) Bruno Aploks, M.D. (R. 959–64); (6) Plaintiff's mother and aunt (R. 344–47); (7) Judith Schipper, D.N.P. (R. 986–87); (8) Andy Lopez-Williams, Ph.D. (R. 367–69, 533–34); and (9) employability assessments for the Oneida County Department of Social Services (R. 965–66, 971–72, 976–77).

### C. The ALJ's Decision Denying Benefits

The ALJ issued a decision on April 1, 2019, and determined that Plaintiff was not disabled under the Social Security Act. (R. 33–46). After finding, as an initial matter, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, (R. 35), the ALJ used the required five-step evaluation process to reach his conclusion.[5]

---

[5] Under the five-step analysis for evaluating disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a severe impairment, (3) that the impairment is not one listed in Appendix 1 of the regulations that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (internal quotation marks and punctuation omitted). "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date of February 22, 2017. (*Id.*). At step two, the ALJ determined that Plaintiff had the following severe impairments under 20 C.F.R. §§ 404.1520(c), 416.920(c): "thoracic scoliosis, status post right rotator cuff repair surgery, asthma, migraine headaches, vertigo, tinnitus, obesity, Attention-Deficit/Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder (GAD), unspecified depressive disorder, panic disorder, agoraphobia, and adjustment disorder." (R. 35–36). The ALJ noted that the record also reflected diagnoses or reports of Gastroesophageal Reflux Disease, a small hiatal hernia, degenerative changes in Plaintiff's left acromioclavicular joint, degenerative disc disease, lymphadenopathy, fibromyalgia, and bilateral tingling and numbness, but determined that these were not severe impairments. (R. 36).[6]

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 36 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926)). The ALJ evaluated the severity of Plaintiff's mental impairments and determined that:

> the claimant has no more than mild limitations in understanding, remembering or applying information; no more than mild limitations interacting with others; no more than moderate limitations concentrating, persisting or maintaining pace; and no more than mild limitations in adapting or managing oneself.

(R. 38). Because Plaintiff did not have at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria of Listing 12.04, depressive, bipolar and related disorders, and Listing 12.06, anxiety and obsessive-compulsive disorders, were not

---

[6] Plaintiff does not challenge the ALJ's findings at step two that these conditions were nonsevere.

satisfied. (*Id.*). The ALJ also determined that the "paragraph C" criteria were not satisfied as "it would seem that [Plaintiff] has more than a minimal capacity to adapt to changes in environment and to demands which are not part of her daily life." (*Id.*).

The ALJ proceeded to determine Plaintiff's residual functional capacity ("RFC")[7] and found that Plaintiff had the RFC "to perform light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with additional limitations. (R. 39). Specifically,

> she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ropes, ladders, or scaffolds. She cannot tolerate concentrated exposure to respiratory irritants. She should never be exposed to unprotected heights or moving mechanical parts. She can tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions. She can tolerate a moderate noise intensity level . . . . She can tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store. She can understand, remember and carry out simple instructions, and make simple work related decisions. She can work at a consistent pace throughout the workday, but not at a production rate pace, where each task must be completed within a strict time deadline. She can tolerate occasional interaction with coworkers, supervisors and the public. She can tolerate occasional changes in the work setting.

(*Id.*). In making this determination, the ALJ followed a two-step process by which he first determined "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." (*Id.*).

---

[7] The regulations define residual functional capacity as "the most [a claimant] can still do despite" her limitations. 20 C.F.R. § 404.1545(a)(1).

Applying this two-step process, the ALJ found that while the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 40). While the ALJ did adopt some restrictions in formulating Plaintiff's RFC, he declined to adopt further restrictions because "the record indicates that the claimant is not as restricted as alleged." (R. 41).

The ALJ considered the medical opinions and prior administrative medical findings in the record. (R. 41–44). The ALJ found the opinions of state agency medical consultants Gabriel Feldman, M.D., and Kimberly Lieber-Diaz, Psy.D., to be persuasive because they "have program knowledge and professional expertise" and their conclusions were "consistent with the complete record." (R. 42). The ALJ also found the opinions of consultative examiners Rita Figueroa, M.D., and David Schaich, Psy.D., persuasive (*Id.*). The ALJ stated that their conclusions were consistent with the whole record, they had "program and professional knowledge," and they had the opportunity to examine Plaintiff. (R. 42–43). The ALJ found the opinion of Ashley Ritter, LMSW, to be "somewhat persuasive"; the assessment from Bruno Aploks, M.D. regarding vertigo and tinnitus to be "of limited persuasiveness"; and the statements from Plaintiff's mother and aunt to be "of only limited persuasiveness." (R. 43).

However, the ALJ found the opinions of treating providers Judith Schipper, D.N.P., and Andy Lopez-Williams, Ph.D., to be "not persuasive" and "generally unpersuasive," respectively. (R. 43–44). The ALJ identified record evidence which was inconsistent with Nurse Practitioner Schipper's "severe restrictions" in Plaintiff's physical abilities. (R. 43). The ALJ similarly found that Dr. Lopez-Williams's opinions were "not consistent" with the complete record, including

7

evidence that Plaintiff had the ability to perform volunteer work and socialize regularly. (R. 43–44 (citing R. 255, 553)).

At step four, having determined Plaintiff's RFC and relying on the testimony of the vocational expert, the ALJ determined that Plaintiff was "unable to perform her past relevant work as actually or generally performed." (R. 44).

At step five, relying on the testimony of the vocational expert, the ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the occupations of garment sorter, cafeteria attendant, and office helper. (R. 45–46). Accordingly, the ALJ found Plaintiff "not disabled." (R. 46).

### D. New Evidence Submitted to the Appeals Council

Plaintiff requested review of the ALJ's decision and submitted additional evidence to the Appeals Council for consideration. (R. 10–24). The new evidence consisted of notes from a review conducted by ADHD and Autism Psychological Services and Advocacy on September 19, 2019; a progress note from Rochester Brain and Spine Group, PLLC signed on August 20, 2019; and a Medical Source Statement (Psychiatric) from Community Health and Behavioral Services prepared in June 2019 (the "Jones/Short opinion").[8] The Jones/Short opinion was prepared by Allison Short, MA, AMFT, Plaintiff's therapist. (R. 21–24). In addition, Timothy Jones, MS, NPP, Plaintiff's nurse practitioner, wrote "I am in agreement with this assessment" and signed the statement. (R. 22). The Jones/Short opinion states that the opinions expressed in it

---

[8] The exact date of the Jones/Short opinion is difficult to read. The Appeals Council lists the opinion as dated June 18, 2019, and Plaintiff lists the opinion as dated June 10, 2019. (R. 2; Dkt. No. 14, at 5).

"pertain to the time period from 01/2017 through the present." (*Id.*). The Jones/Short opinion assessed Plaintiff's limitations in a variety of areas and evaluated to what extent her symptoms would interfere with her ability to remain on task. (R. 21–24). The opinion lists Plaintiff's diagnoses and states: "It is not recommended for [Plaintiff] to work at this time due to her being psychiatrically unstable." (R. 22).

### III. DISCUSSION

#### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence is 'more than a mere scintilla.' It means such *relevant* evidence as a *reasonable mind* might accept as adequate to support a conclusion." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (per curiam) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very deferential," and the Court may reject the facts that the ALJ found "only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The Court, however, must also determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). The Court reviews de novo whether the correct legal principles were applied and whether the legal

9

conclusions made by the ALJ were based on those principles. *See id.*; *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

### B.     Analysis

Plaintiff argues that (1) the ALJ failed to properly evaluate her mental impairments at step three under 20 C.F.R. § 404.1520a; and (2) the ALJ improperly assessed and weighed the medical evidence. (Dkt. No. 14, at 11–21). Because the Court determines that remand is required in light of the new evidence submitted to the Appeals Council, the Court first discusses the evaluation of the medical opinions in the record.

#### 1.     Evaluation of the Opinion Evidence

Plaintiff argues that the ALJ improperly assessed and weighed the medical evidence because (1) the treating physician rule remains applicable despite new Social Security regulations and (2) the opinions of Plaintiff's treating providers should have been found more persuasive. (Dkt. No. 14, at 16–21). Defendant responds that the new Social Security regulations are valid, the treating physician rule is not applicable to Plaintiff's case, and the ALJ properly assessed the persuasiveness of the medical opinions. (Dkt. No. 20, at 8–17).

##### a.     Treating Physician Rule

Historically, the "treating physician rule" required that "[t]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment [be] given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Burgess*, 537 F.3d at 128). However, for claims filed on or after March 27, 2017, regulations regarding the evaluation of medical evidence have been amended and several of the prior Social Security Rulings have been rescinded. *See* 20 C.F.R. §§ 404.1527, 416.927 (noting applicability only to "claims filed

before March 27, 2017"). In accordance with the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ is still required to "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." *Id*. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2).

Plaintiff, whose claims were filed after March 27, 2017, acknowledges that the new regulations apply to her claims. (Dkt. No. 14, at 17). However, Plaintiff argues that the treating physician rule remains valid because "it was enunciated by the Second Circuit" before being "set in the Regulations," and that the rule "remains applicable despite the conceptual change from an assessment of weight to that of persuasiveness." (*Id.* at 17–18). Multiple courts have considered and rejected similar challenges to the validity of the new regulations. *See, e.g.*, *Amanda R. v. Comm'r of Soc. Sec.*, --- F. Supp. 3d. ---, No. 20-cv-596, 2021 WL 3629161, at *6–7, 2021 U.S. Dist. LEXIS 154491, at *15 (N.D.N.Y. Aug. 17, 2021) ("Multiple courts have considered similar arguments as the new regulations become more widely applied, and all have upheld the validity of the Commissioner's elimination of the treating physician rule and implementation of the new

regulations." (quoting *Tasha W. v. Comm'r of Soc. Sec.*, No. 20-cv-731, 2021 WL 2952867, at *6, 2021 U.S. Dist. LEXIS 130859, at *13–14 (N.D.N.Y. July 14, 2021) (collecting cases))); *see also Harry B. v. Comm'r of Soc. Sec.*, No. 20-cv-227, 2021 WL 1198283, at *10–11, 2021 U.S. Dist. LEXIS 60509, at *25–30 (N.D.N.Y. Mar. 30, 2021). Accordingly, the Court rejects Plaintiff's challenge to the validity of the new regulations.

### b. Medical Opinions

Plaintiff argues generally that, even under the new regulations, the opinions of her treating providers "should have been found more persuasive" as they were supported by objective medical evidence and not inconsistent with the record. (Dkt. No. 14, at 20). As most relevant here, Plaintiff argues that the Appeals Council "never explained to what degree the opinions expressed [in the Jones/Short opinion] are persuasive." (*Id.* at 6). Defendant responds that the Jones/Short opinion does not warrant remand because it does not alter the weight of the evidence. (Dkt. No. 20, at 17–19).

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Here, after the ALJ's decision, Plaintiff requested review by the Appeals Council and submitted additional evidence for consideration. (*See* R. 10–24). Among that evidence was the Jones/Short opinion. (*See* R. 21–24). This statement was prepared sometime in June 2019 and indicates that the opinions it contains pertain to the time period "from 01/2017 through the present." (R. 21). In denying Plaintiff's request for review of the ALJ's decision, however, the Appeals Council stated: "The Administrative Law Judge decided your case through April 1, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or

before April 1, 2019." (R. 2). Defendant concedes that the Appeals Council's "reasoning was incorrect," as the opinion clearly pertains to the time period prior to the ALJ's decision. (Dkt. No. 20, at 18). Further, as discussed below, the Jones/Short opinion is material because it concerns Plaintiff's mental impairments and limitations, *see King v. Comm'r of Soc. Sec.*, No. 19-6222, 2020 WL 5248473, at *1, 2020 U.S. Dist. LEXIS 160456, at *3 (W.D.N.Y. Sept. 2, 2020) ("Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied."), and there is a "reasonable probability that it would have influenced the Commissioner to decide [Plaintiff's] application differently," *id.* Accordingly, because the Appeals Council erred in finding the new Jones/Short opinion did not relate to the period at issue and thus failed to consider the opinion, remand is required. *See Tyrone P. v. Saul*, No. 20-112, 2021 WL 288788, at *13, 2021 U.S. Dist. LEXIS 16123, at *35 (D. Conn. Jan. 28, 2021) (holding, after evaluating the opinion at issue, that the Appeals Council erred in finding it did not relate to the period at issue).

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). Where the "Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision," and therefore "our review focuses on the ALJ's decision." *Id.* (citing 42 U.S.C. § 405(g)). In reviewing the ALJ's decision, "[w]e 'review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.'" *Id.* (quoting *Perez*, 77 F.3d at 46).

When the new evidence submitted to the Appeals Council by claimants consists of opinions from their treating physicians, district courts in the Second Circuit applying the old regulations have held that the Appeals Council must apply the treating physician rule to the new opinions. *See, e.g.*, *Patrick M. v. Saul*, No. 18-cv-290, 2019 WL 4071780, at *7, 2019 U.S. Dist. LEXIS 146948, at *18–19 (N.D.N.Y. Aug. 28, 2019) (noting that the Second Circuit "has not squarely addressed the Appeals Council's obligation to apply the treating physician rule when it denies review" but continuing to hold, in accordance with the majority of district courts in this Circuit, that the Appeals Council must follow the rule and collecting cases). If the Appeals Council were not obligated to apply the treating physician rule to the new evidence, the Court would be in the position of applying the rule in the first instance when "evaluating whether the ALJ's decision is supported by the current evidence." *Id.* (citing *Lesterhuis*, 805 F.3d at 88, 89). However, the analysis required under the rule must initially be done by the Commissioner. *Id.*

Although the treating physician rule does not apply to Plaintiff's claims, the new regulations which are applicable nonetheless specify how medical opinions must be assessed and require the agency to articulate how it considered a medical opinion and "explain how [it] considered the supportability and consistency factors" in assessing the opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Although these regulations are relatively new and relevant caselaw is developing, the Court finds that the reason for requiring the Commissioner, and not the Court, to apply the treating physician rule in the first instance applies with equal force to the new regulations requiring the assessment of an opinion's persuasiveness. *See Howard D. v. Saul*, No. 19-1615, 2021 WL 1152834, at *14, 2021 U.S. Dist. LEXIS 57916, at *42–44 (N.D.N.Y. Mar. 26, 2021) (remanding where the Appeals Council did not apply the new regulations to a medical opinion submitted to the Appeals Council); *see also*

*Lesterhuis*, 805 F.3d at 89 (finding the ALJ's decision was "not supported by substantial evidence" where "[n]either the ALJ nor the Appeals Council analyzed the substance of" the medical opinion submitted to the Appeals Council).

Significantly, the Jones/Short opinion creates a reasonable probability that the ALJ may have reached a different determination regarding Plaintiff's disability status, as it "contradicted the ALJ's conclusion in important respects" *See Lesterhuis*, 805 F.3d at 88. The providers assessed Plaintiff's limitations in a variety of areas and found she was moderately or markedly limited in many of them. (R. 21–22). Their opinion, if credited, could affect the assessment of Plaintiff's mental impairments under 20 C.F.R. § 404.1520a and therefore whether her mental impairments satisfy the "paragraph B" criteria of the Listings 12.04 and 12.06. To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A)(2)(b). Here, the Jones/Short opinion, if found persuasive, could lead to a finding that Plaintiff was disabled because she has a marked limitation in the two areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace. *See, e.g.*, *Vonaa v. Berryhill*, No. 17-1378, 2019 WL 427319, at *7, 2019 U.S. Dist. LEXIS 17248, at *19 (D. Conn. Feb. 4, 2019) (finding that, if the ALJ had given controlling weight to the opinion of the plaintiff's primary care physician that the plaintiff "was markedly limited in all functional areas," he "would have found Plaintiff disabled at Step Three" since the plaintiff's "mental impairments satisfied the Paragraph B requirements" of Listings 12.04 and 12.06). For example, as it relates to interacting with others, Nurse Practitioner Jones and Ms. Short opined that Plaintiff has marked limitations in: the ability

to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with peers without distracting them or exhibiting behavioral extremes. (R. 21–22). As it relates to concentrating, persisting, or maintaining pace, they opined that Plaintiff has marked limitations in: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*). Finally, the statement opines as to the amount of time that Plaintiff would be "off-task" throughout a day, an issue that the ALJ did not explicitly address. (R. 23).

Defendant argues that the Jones/Short opinion cannot "alter the weight of the evidence" because it is inconsistent with other record evidence and the "same reasoning the ALJ articulated in rejecting the Lopez-Williams opinion would apply with equal force." (Dkt. No. 20, at 19).[9] This is not necessarily the case, however. Dr. Lopez-Williams appears to have evaluated Plaintiff on two occasions, in February 2017 and September 2019. (R. 15–17, 359–61). Nurse Practitioner Jones, by contrast, has seen Plaintiff on a regular basis since August 2016 through at least December 2018. (*See* R. 535–86, 825–914; *see* R. 924 (last treatment note in the record dated December 6, 2018)). Additionally, Dr. Lopez-Williams stated that the "scope of assessment was related to an ADHD diagnosis" and he could not "specifically comment on the other domains."

---

[9] Defendant also argues that the Jones/Short opinion could not alter the weight of the evidence because "the authors provided no support for the checkbox opinions it contained, apart from a list of diagnoses." (Dkt. No. 20, at 19). However, the ALJ gave no similar reason for discounting the opinion of Dr. Lopez-Williams, (*see* R. 43–44), and the Court declines to assess the persuasiveness of the Jones/Short opinion in the first instance. *Cf. Patrick M.*, 2019 WL 4071780, at *8, 2019 U.S. Dist. LEXIS 146948, at *23 (declining to consider arguments made by defense counsel regarding why an opinion might be assigned limited weight because "it is the Commissioner who must, in the first instance, apply the treating physician rule to evaluate medical evidence, not the Court or defense counsel").

(R. 368). Dr. Lopez-Williams therefore did not rate Plaintiff in the areas of social interaction and adaption. (*Id.*). The Jones/Short opinion, by contrast, assesses Plaintiff's limitations in these areas, and opines that she has a number of moderate and marked limitations. (R. 22). In addition to these differences between the two opinions and between Plaintiff's treating relationships with each provider, it is also possible that the Jones/Short opinion could influence the ALJ's assessment of the persuasiveness of Dr. Lopez-Williams's opinion. *See Patrick M.*, 2019 WL 4071780, at *8, 2019 U.S. Dist. LEXIS 146948, at *23 (finding that, "[t]o the extent that [the two providers] have similar opinions about such limitations that were inconsistent with the ALJ's RFC findings, the existence of a consistent medical opinion would create a reasonable probability of influencing the ALJ's decision").

In sum, the Appeals Council erroneously concluded the new opinion did not relate to the period at issue and did not analyze the opinion under the new regulations. Because the persuasiveness of the Jones/Short opinion was not analyzed under the applicable regulations and there is a reasonable probability that the opinion would change the outcome of the decision, the Court cannot say that substantial evidence supported the ALJ's decision, and the matter must be remanded for further proceedings.

### 2. Remaining Arguments

Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED**; and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: September 14, 2021
Syracuse, New York

Brenda K. Sannes
U.S. District Judge